## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **QUINCY BIOSCIENCE, LLC,** | |
| **Plaintiff,** | **Case No. 3:21-cv-00787** |
| v. | |
| **RETAIL HUNTER LLC and LEILA SETO** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT FOR FALSE ADVERTISING, TRADEMARK INFRINGEMENT AND RELATED CLAIMS

This is a civil action by Plaintiff Quincy Bioscience, LLC ("Quincy") against Defendants Retail Hunter LLC, and Ms. Leila Seto (collectively "Defendants") for damages and injunctive relief arising out of Defendants' false advertising, unjust enrichment, infringement of Plaintiff's federally registered PREVAGEN® trademark, and unfair competition.

### PARTIES AND RELATED ENTITIES

1.     Plaintiff Quincy Bioscience, LLC ("Plaintiff" or "Quincy") is a Wisconsin limited liability corporation with an address at 726 Heartland Trail, Suite 300, Madison, Wisconsin 53717.

2.     Defendant Retail Hunter LLC ("Retail Hunter") is a Florida limited liability company with a registered address of 5575 S. Semoran Blvd., Suite 36, Orlando, Florida 32822-1747.  Upon information and belief, Retail Hunter's principal place of business is located at 9075 Carrington Avenue, Parkland, Florida 33076.

3.     Defendant Retail Hunter is listed on the internet commerce website Amazon.com as the owner and operator of a third-party storefront whose Amazon Merchant ID is A2TT75KRN19LLU and which currently operates under the storefront name "Retail Mail."

1

4.      Defendant Leila Seto ("Seto") is a resident of the State of Florida.

5.      Defendant Seto is believed to reside at 9075 Carrington Avenue, Parkland, Florida 33076.

6.       Upon information and belief, Seto either owns, or is an owner of, Retail Hunter, and directs and controls the acquisition, sale, and marketing of products sold by Retail Hunter.  Collectively Retail Hunter and Seto are referred to herein as "Defendants."

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the federal trademark, false advertising and unfair competition claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.

8.      This Court has supplemental jurisdiction over the unjust enrichment claims in this Complaint which arise under the common law of the State of Wisconsin pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.      Because Defendant has caused injury to Quincy in the State of Wisconsin, this Court has personal jurisdiction over Defendant under Wis. Stat. § 801.05(4).  Upon information and belief, the Defendants have engaged in continuous and systematic business contacts with the State of Wisconsin and customers therein via, among other activities, unlawful and unauthorized internet sales activities directed to Wisconsin. Consequently, personal jurisdiction exists over the Defendants because Defendants conduct business in Wisconsin and in this judicial district, are aware of or have notice of Quincy's domicile in this judicial district, have purposefully directed action to Wisconsin and this district, or have otherwise availed themselves of the privileges and protections of the laws of the State of Wisconsin, such that this Court's assertion of jurisdiction over the Defendants does not offend traditional notions of fair play and due process.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District, causing damages to Plaintiff in this District.

## FACTUAL BACKGROUND

### *Plaintiff Quincy's PREVAGEN® Products*

11.     This civil action arises out of the Defendants' unlawful acquisition and marketing of Quincy's PREVAGEN® brand products and their infringement of Quincy's PREVAGEN® trademark.

12.     Quincy is a research-based biotechnology company which develops, markets and sells dietary supplements used for, *inter alia*, the support of cognitive function. Since at least as early as 2007, Quincy has used the trademark PREVAGEN® in commerce in connection to dietary supplements.

13.     Quincy's high-quality dietary supplements, including its PREVAGEN® line of dietary supplements, are widely available for retail purchase from authorized sellers in brick and mortar stores throughout the United States.   Quincy's PREVAGEN® supplements are also widely marketed and distributed by way of Internet sales from Quincy or Quincy's authorized sellers.

14.     Quincy owns all rights to U.S. Trademark Registration No. 3,349,744 for the PREVAGEN® mark, which is used in connection with "dietary supplements" in International Class 005 and United States Classes 006, 018, 044, 046, 051, and 052.  The PREVAGEN® mark was registered on December 4, 2007.

15.     By virtue of Quincy's long and continuous use of its mark, the foregoing trademark registration is now legally incontestable pursuant to 15 U.S.C § 1065.  A copy of U.S. Trademark Registration No. 3,349,744 is attached hereto as Exhibit A.

16.    As a result of the foregoing, the PREVAGEN® trademark is widely recognized by consumers of dietary supplements.

17.    Quincy's PREVAGEN® products are typically sold packaged in a single facing box (i.e., "outer box packaging"), which contains a bottle of dietary supplements sealed with a plastic safety overwrap, as well as a product information sheet discussing frequently asked questions.  Both the box and the sheet contain valuable information regarding the product which is not present on the bottle label, including information on the use of the product, answers to frequently asked questions about the product, and a toll-free customer service number for contacting Quincy.

18.    Quincy also sells its PREVAGEN® products in so-called "blister" packaging, wherein a bottle of the product is sealed in a plastic safety wrap attached to a flat cardboard panel.  In this configuration, the panel features information on the use of the product, answers to frequently asked questions, and Quincy's toll-free customer service number on the back of the cardboard panel.

19.     Quincy's PREVAGEN® products are sometimes packaged with offers for purchasers to receive free informational booklets relating to the product and/or coupons for future purchases.

20.    Quincy and its authorized sellers have incurred significant losses as a result of retail theft of PREVAGEN® products.  Quincy shares the direct losses resulting from such theft with its authorized retail sellers.  Quincy has been further damaged by retail theft due to diminished sales of its products caused by increases in the price of the product caused by such retail theft.

21.    Quincy's experience is part of a broader problem of a nationwide proliferation of retail theft that has accompanied the rise of internet commerce and largely anonymous online sellers of retail goods.  As noted by the Retail Industry Leaders Association, "[t]he ease with which organized criminal networks can utilize the anonymity of online marketplaces to fence stolen

goods has led to a proliferation of organized theft targeting local retailers."[1]  National pharmacy chain Walgreens has stated that "[o]rganized retail crime is one of the top challenges facing retailers today....The emergency of largely unregulated online marketplaces and third party sellers have given criminals and ORC [organized retail crime] groups additional means to sell stolen and legitimate good[s]...."[2] Sometimes the online sellers receive stolen goods directly from the shoplifters, while at other times the stolen goods are sold to online sellers by suspicious third party sources who have collected the stolen goods from shoplifters.

22.     Quincy additionally incurs significant expenses in developing and improving anti-theft mechanisms in the packaging of PREVAGEN® products in order to deter retail theft.

23.     Quincy offers an extended-length money-back guarantee to purchasers of genuine PREVAGEN® products from Quincy or from Quincy's authorized sellers, which does not extend to purchases from unauthorized sellers of PREVAGEN® products or of stolen PREVAGEN® products.

24.     Quincy has established and maintains quality control programs with respect to the research, design, manufacturing, packaging, distribution and sale of its PREVAGEN® product, including the capability to track the location of products through its distribution line, and the marking of product containers with lot numbers which can be used in the event of any safety issues or investigations concerning the product.

25.     Product quality is very important to consumers of dietary supplements.  Quincy receives numerous complaints from customers regarding PREVAGEN® products purchased with missing

---

[1] https://www.durbin.senate.gov/newsroom/press-releases/durbin-cassidy-introduce-bill-to-ensure-greater-transparency-for-third-party-sellers-of-consumer-products-online (last accessed March 19, 2020).
[2] https://www.businesswire.com/news/home/20200310005927/en/Walgreens-Supports-INFORM-Consumers-Act (last accessed March 19, 2020).

and damaged packaging, often with concerns the contents are defective. Almost invariably, these complaints come from purchasers of PREVAGEN® products from unauthorized online sellers.

26.     Consumers who purchase PREVAGEN® and other products from unauthorized sellers on online marketplaces and receive products with such defects frequently post negative reviews of the products themselves rather than of the seller of the products. Sometimes such negative reviews are accompanied by photos of a product with damaged or soiled packaging. Sometimes such negative reviews include a low rating on a numerical scale, such as "Amazon's 1-to-5 star" product rating, thus reducing the PREVAGEN® products average product rating.

27.     Customer reviews and product ratings are highly relevant to consumer purchases. According to one study, merely three negative online reviews can deter a majority of online consumers viewing the reviews from purchasing a product.[3]

28.     Authorized sellers of Quincy's PREVAGEN® products are prohibited from knowingly selling to wholesalers, online resellers, and similar non-retail sellers.

29.     Quincy has developed a test-purchase program to identify unauthorized sellers on various Internet sites such as Amazon.com to curtail the unlawful and potentially dangerous sale of unknown items bearing its PREVAGEN® trademark by such unauthorized sellers.

### Defendants' Wrongful and Infringing Conduct

30.     Defendants sell dietary supplement products identified as PREVAGEN® with accompanying pictures of bottles of Quincy's PREVAGEN® products. Defendants offer such products on the internet commerce website Amazon.com and, upon information and belief, on other internet commerce websites.

---

[3] Graham Charlton, How many bad reviews does it take to deter shoppers?, Econsultancy, April 11, 2011. https://web.archive.org/web/20161228204846/https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers (last accessed December 3, 2021).

31.    Defendants are not authorized sellers of PREVAGEN® products.

32.    The PREVAGEN® products sold by Defendants do not carry Quincy's extended-length money back guarantee.

33.    Throughout 2021 Quincy made test orders of PREVAGEN® products sold by Defendants on Amazon.com.  The products delivered to Quincy repeatedly arrived in defective condition. Defects included missing outer box packaging, missing product inserts, removed or damaged security tags and altered lot numbers.  For some products, stickers had been placed over the removed or damaged security tags.  Some of the products arrived with damaged packaging or with a foreign substance on the inner bottle packaging.

34.    For multiple test orders of PREVAGEN® products, Defendants billed the credit cards used by Quincy in placing the orders, but did not deliver any products or refund the money charged to the credit cards.

35.     Tracking information contained in the PREVAGEN® products received by Quincy in response to test orders indicate that the products had been previously distributed to one of Quincy's authorized brick-and-mortar outlets for retail sale.

36.    Upon information and belief, the PREVAGEN® products sold by Defendants were previously stolen from Quincy's authorized sellers.

37.    Upon information and belief, Defendants, as experienced online sellers of consumer goods, recognized or should have recognized from the condition of the PREVAGEN® products they purchased for resale and/or the below-fair-market-price Defendants paid for the PREVAGEN® products that the products had previously been stolen from Quincy's authorized sellers.

38.    Defendants regularly sell dietary supplements identified as Quincy's PREVAGEN® products in defective condition such as those Quincy received in its test orders of Defendants.

39. The missing outer box packaging, damaged outer box packaging, missing product inserts, removed or damaged security tags, altered lot numbers, presence of foreign substances on packaging, and lack of an extended-length guarantee, each and in combination, represents a material difference between Quincy's genuine PREVAGEN® products and Defendants' products.

40. Consumers regularly contact Quincy with complaints about the defective or missing packaging of PREVAGEN® products sold by unauthorized internet sellers and have posted negative reviews of PREVAGEN® products on Amazon.com sold to them by unauthorized sellers.

41. At least one of Defendants' customers has contacted Quincy PREVAGEN® product he received with damaged packaging and a covered security tag.

42. Defendants had knowledge of Quincy's prior use and registration of the PREVAGEN® trademark, and acted willfully and with intent to deceive consumers in its adoption and use of the PREVAGEN® mark.

43. Defendants willfully ignored or were willfully blind to the poor conditions in which they sold PREVAGEN® products and to the below-market prices for which they paid for PREVAGEN® products.

44. Defendants have sold PREVAGEN® product with the actual or constructive knowledge that at least some of the products had been stolen from Quincy's authorized brick-and-mortar retailers.

45. Defendants' purchases of previously stolen PREVAGEN® products enable Defendants to sell PREVAGEN® product at a lower price than Quincy's authorized sellers sell PREVAGEN® product, providing a competitive advantage to Defendants, and diverting sales from Quincy and Quincy's authorized sellers.

## COUNT I
## FALSE ADVERTISING (LANHAM ACT)

**15 U.S.C. § 1125(a)(1)(B)**

46.     Quincy repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

47.     The PREVAGEN® products offered for sale by Defendants on Amazon.com were and continue to be represented to consumers as being in "new" condition.

48.     Amazon.com defines "new" condition as "[a] brand-new item.  Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments.  Original packaging is present for most New items but certain items may be reboxed."

49.     The PREVAGEN® products by Defendants on Amazon.com were not in "new" condition as the term is defined by Amazon.

50.     Consumers who purchased PREVAGEN® products from Defendants relied on the representation that the products were in "new" condition as defined by Amazon.

51.     Defendants, in selling the products on Amazon.com falsely purported to be "new" PREVAGEN® products, have made and distributed in interstate commerce and in this District advertising that contains false and misleading statements of fact regarding its products.

52.     Defendants identified the PREVAGEN® products sold on Amazon.com as "new" knowing, or willfully ignoring, that the products were not in new condition.

53.     By selling products PREVAGEN® products purported to be "new", Defendants have misrepresented the nature, characteristics and qualities of Quincy's products bearing the PREVAGEN® trademark, as Defendants sell and have sold products that do not contain all original manufacturers' warranties, original packaging or protective wrapping, that are missing outer box packaging, product information sheets, security tags, and promotional materials. Accordingly, Defendants' advertisements contain actual misrepresentations and/or misleading statements.

54.     Defendants' act of unlawfully advertising and selling Quincy's PREVAGEN® products on Amazon.com actually deceive, or have a tendency to deceive, a substantial segment of Quincy's customers.

55.     Defendants' false and misleading statements are likely to influence purchasing decisions of consumers by diverting sales from authorized PREVAGEN® sellers who sell the product in actual "new" condition as defined by Amazon.com.

56.     Defendants' false and misleading statements have damaged consumer goodwill in Quincy and Quincy's PREVAGEN® products.

57.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Quincy, including injury to Quincy's business, reputation and goodwill, for which there is no adequate remedy at law.  Based on Defendants' wrongful conduct, Quincy is entitled to injunctive relief as well as monetary damages, and other remedies provided by sections  15 U.S.C. §§1116-1118, including Defendants' profits from sales on Amazon.com, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

**COUNT II**
**TRADEMARK INFRINGEMENT (LANHAM ACT)**
**(15 U.S.C. § 1114 and § 1125(a)(1)(A))**

58.     Quincy repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

59.     Defendants are using Quincy's PREVAGEN® trademark in interstate commerce in connection with Defendants' unlawful sales of nutritional supplement products.

60.     Defendants' use of the PREVAGEN® mark is without Quincy's consent.

61.     Quincy has used the PREVAGEN® trademark in connection with dietary supplements since long prior to Defendants' first use thereof.

62.     PREVAGEN® is registered on the principal register in the United States Patent and Trademark Office for the same type of goods upon or in connection with which Defendants use the mark.

63.     Defendants' use of the PREVAGEN® mark in connection with dietary and nutritional supplements is likely to cause confusion or mistake among consumers, or to deceive consumers as to the source of such goods or as to an affiliation between Quincy and Defendants, in violation of 15 U.S.C. § 1114(1).

64.     Defendants adopted and use the PREVAGEN® mark in bad faith and in willful disregard of Quincy's rights, with the intent to trade on and appropriate the reputation and goodwill that Quincy has built up in those marks and confuse consumers as to the affiliation between Defendants and Quincy, and to divert customers and revenue from Quincy.

65.     Defendants willfully and intentionally use the PREVAGEN® mark, knowing that their use of the mark is unlawful, in connection with the sale, offering for sale, or distribution of Defendants' goods.

66.     The aforementioned actions and activities of Defendants have caused and will continue to cause damage and irreparable harm and injury to Quincy unless and until such time as they are enjoined by this Court.

67.     Upon information and belief, Defendants have made or will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

68.     By reason of the foregoing, Quincy has been and will continue to be irreparably harmed and damaged.  Quincy's remedies at law are inadequate to compensate for this harm and damage.

69.     Defendants' continued and knowing use of Quincy's PREVAGEN® mark without Quincy's consent or authorization constitutes intentional trademark infringement of Quincy's

11

federally registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114 and common law trademark rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A). Based on such conduct, Quincy is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116-1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT III
## UNJUST ENRICHMENT – SALE OF PREVIOUSLY STOLEN GOODS
### (Wisconsin Common Law)

70. Quincy repeats and re-alleges the foregoing paragraphs above as if fully set forth herein.

71. Defendants wrongfully received a benefit by way of its unauthorized receipt, and subsequent sale, of stolen PREVAGEN® products.

72. Defendants' sale of stolen PREVAGEN® products has diverted sales from Quincy's authorized sellers resulting in lower compensation to Quincy.

73. Defendants' sale of stolen PREVAGEN® products has increased Quincy's financial burden with respect to shared losses for stolen goods and increased spending on anti-theft packaging.

74. Defendants' acceptance and retention of the revenue from sales of once-stolen PREVAGEN® product violates fundamental principles of justice, equity, and good conscience, and is inequitable.

75. Defendants will be unjustly enriched unless Defendants are ordered to pay Quincy the value of the stolen PREVAGEN® products Defendants have sold.

## COUNT IV
## UNJUST ENRICHMENT – RETAINED PAYMENTS
### (Wisconsin Common Law)

76. Quincy repeats and re-alleges the foregoing paragraphs above as if fully set forth herein.

77.     Defendants wrongly received a benefit by way of its retention of payment for Quincy's test orders for which Defendants did not deliver any products.

78.     Upon information and belief, Defendants have unjustly collected and retained payment for orders of PREVAGEN® products placed on Amazon.com for which Defendants did not deliver any products.

79.     Defendants' acceptance and retention of the revenue it collected and retained from unfulfilled orders violates fundamental principles of justice, equity, and good conscience, and is inequitable.

80.     Defendants will be unjustly enriched unless Defendants are ordered to pay Quincy the value of the revenue it collected and retailed from Quincy in connection to unfulfilled orders of PREVAGEN® products.

        **WHEREFORE**, Quincy demands judgment against Defendants as follows:

A.      That Defendants and their agents, servants, employees, and attorneys and those persons in active concert or participation with or controlled by them be preliminarily and permanently enjoined from:

        i.      Falsely representing the condition of products sold on Amazon.com or other internet commerce websites;

        ii.     Falsely representing that Defendants are associated with or sponsored by Quincy or engaging in any act which is likely to cause the trade or purchasing public to believe that Defendants are in any way associated with or sponsored by Quincy;

        iii.    Purchasing or selling stolen PREVAGEN® product;

13

iv.    Using the PREVAGEN® mark, or any mark or symbol that may be calculated to represent, or which has the effect of representing, that the services or products of Defendants are sponsored by, authorized by, or in any way associated with Quincy;

v.    That Defendants be required to account to Quincy for any profits derived by it and for damages sustained by Quincy by reason of the acts of false advertising, false designation of origin and unfair competition, trademark infringement, and unjust enrichment complained of herein; and

vi.    That Defendants be required to identify the parties which unlawfully supplied Defendants' PREVAGEN® products.

B.    That judgment be entered against Defendants for an award of Defendants' profits and Quincy's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)(1)(A);

C.    That judgment be entered against Defendants for an award of Defendants' profits and Quincy's damages in an amount to be proven at trial for false advertising and unfair competition under 15 U.S.C. § 1125(a)(1)(B);

D.    That, due to Defendants' intentional and willful acts of trademark infringement, false designation of origin, and false advertising, this case be deemed an exceptional case under 15 U.S.C. § 1117(a);

E.    That all PREVAGEN® products in Defendants' possession or control be delivered up and destroyed pursuant to 15 U.S.C. §1118;

F.    That judgment be entered against Defendants for unjust enrichment in violation of Wisconsin law, with reasonable attorney's fees where appropriate under applicable Wisconsin law; and

G.      That this Court grant to Quincy any further relief deemed just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Quincy Bioscience, LLC respectfully demands a trial by jury in this action under

Rule 38 of the Federal Rules of Civil Procedure.


Dated: December 10, 2021.                    Respectfully submitted,

                                             ***/s/ Sanjay S. Karnik***
                                             Jonathan J. Krit
                                             Sanjay S. Karnik
                                             AMIN TALATI WASSERMAN, LLP
                                             100 S. Wacker Dr., Suite 2000
                                             Chicago, IL 60606
                                             Telephone: (312) 327-3327
                                             Facsimile: (312) 884-7352
                                             Jonathan@amintalati.com
                                             Sanjay@amintalati.com

                                             *Attorneys for Plaintiff,*
                                             *Quincy Bioscience, LLC*